IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 14, 2025, at Jackson

**STATE OF TENNESSEE v. DAVID EDWARD SEICKENDICK**

**Appeal from the Criminal Court for Cumberland County**
**No. CC21CR225     Gary McKenzie, Judge**

———————————————————

**No. E2024-01270-CCA-R3-CD**

———————————————————

Defendant, David Edward Seickendick, appeals the judgment of the Cumberland County Criminal Court revoking his probation and ordering him to serve the balance of his previously ordered probationary sentence in confinement. On appeal, Defendant argues that the trial court abused its discretion by failing to consider Defendant's medical conditions in revoking his probation and ordering him to serve his original sentence. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW WILSON, J., delivered the opinion of the court, in which J. ROSS DYER, and JOHN W. CAMPBELL, SR., JJ., joined.

Jeffrey A. Vires, Crossville, Tennessee, for the appellant, David Edward Seickendick.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Bryant C. Dunaway, District Attorney General; and Allison Null, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Factual and Procedural Background

On June 10, 2022, Defendant pleaded guilty to introduction of contraband into a penal facility. The trial court sentenced him to four years imprisonment, which it suspended to supervised probation. On October 5, 2022, the trial court revoked Defendant's probation after he obtained new charges of driving under the influence

("DUI") and driving on a suspended license.[1]  Defendant received time served for these violations and was reinstated to supervised probation.

Approximately one year later, on October 20, 2023, an affidavit of violation of probation was filed against Defendant, stating that on September 26, 2023, he tested positive for methamphetamine and amphetamine.  A second affidavit of violation of probation was then filed on December 11, 2023, stating that Defendant failed to report to the Crossville Probation Office on December 4, 2023.

The trial court held a revocation hearing on August 6, 2024.  At the hearing, the State argued Defendant's probation should be revoked and that he should be ordered to serve his sentence in confinement given his repeated violations.  Defendant conceded that he had violated the conditions of his probation.  Defendant argued that given his significant medical problems, "good behavior probation" would best serve the principles and purposes of sentencing.  Defendant explained that his medical diagnoses included cirrhosis of the liver, diabetes, and chronic heart failure.  Defendant asserted that he was eligible for hospice care and said that he had an estimated six months to live given his medical conditions.  Defendant entered 126 pages of medical records as an exhibit to the hearing in support of his assertion.

Following arguments from counsel, the trial court recognized Defendant's recent violations for testing positive for methamphetamine and failing to report.  The court noted that those violations followed Defendant's previous probation violations for DUI and driving on a suspended license.  The court acknowledged Defendant's medical issues, when it stated: "It looks like in October of '23, there's medical evidence here that a Cookeville doctor, I guess, that [Defendant's] prognosis was six months or less if his disease runs its natural course."  Nonetheless, the trial court found:

> The problem is, you've been on probation, and you come in here and you violated with a DUI, and you've got time to serve, you get back out, and now you test positive for methamphetamine, which is a violation, zero tolerance violation of probation, as well as the failure to report.  We can't ever get you into the courtroom.  [The court doesn't] know how many times we've tried, and it seems like every time, you know, it just happens to coincide, and it may just be coincidence, but that's a lot of coincidences, it seems like every time we have [c]ourt, you find yourself in a doctor's office somewhere or in some hospital.  And again, that may be coincidence, but you can't - - what [is the court supposed] to do?  Just say, "Well the law doesn't

_____

[1] This violation is noted in the probation violation hearing from August 6, 2024; however, it is not otherwise reflected in the record.

apply to you, that you just . . ." You know, if you were sitting there normal as can be, [the court] wouldn't even be sitting here thinking about this, because [the court] would just send you off to serve your sentence. Right? And the thing that [the court] is trying to balance is . . . the plight that you find yourself in, which I'm not making light of that or trying to point a finger, but . . . certainly drug use and abuse gets you exactly where you end up.

Ultimately, the trial court found releasing Defendant was not "the answer," and it revoked Defendant's probation and ordered him to serve the balance of his four-year sentence in confinement. In addition to a written revocation order, the court entered a separate order for the "expeditious transfer" of Defendant to the Tennessee Department of Correction ("TDOC") Special Needs unit in light of Defendant's medical conditions. Defendant timely appealed the trial court's written revocation order.

## II. Law and Analysis

Defendant asserts that the trial court abused its discretion by revoking his probation and ordering him to serve his sentence in confinement despite his medical conditions. The State argues that Defendant is not entitled to relief because "the trial court explicitly considered those medical issues and found that full revocation was warranted in spite of them." We agree with the State.

We consider the trial court's determination to revoke probation under an abuse of discretion standard with a presumption of reasonableness so long as the trial court makes sufficient findings for its decisions on the record. *See State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). Probation revocation is a two-step consideration in which the trial court makes two distinct determinations. *Id.* at 753. "The first is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *See id*. at 757. "[T]hese are two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." *Id.* at 757-58. "Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden." *Id.* at 758.

A trial court may revoke a defendant's probation upon a finding by a preponderance of the evidence that a defendant has violated the conditions of probation. *See* Tenn. Code Ann. § 40-35-311(d)(1); *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Addressing the consequences of the violation, this court has explained:

Upon finding that a defendant has violated probation, the trial court may: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on

- 3 -

appropriate modified conditions; or (5) resentence the defendant for remainder of the unexpired term to a sentence of probation. *See* [Tenn. Code Ann.] §§ 40-35-308(c)(1), (2); -310; -311(e)(1), (2) (2021).

*State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *3 (Tenn. Crim. App. July 11, 2022), *no perm. app. filed*.

Based on our review, we agree with the State that the trial court acted within its discretion when it revoked Defendant's probation and ordered that he serve the balance of his four-year sentence in confinement. First, Defendant pleaded guilty to violating the conditions of his probation, satisfying the requirements under the first *Dagnan* determination. *See Dagnan*, 641 S.W.3d at 758. Second, the court acted within its discretion in ordering Defendant to serve the balance of his sentence as a consequence. *Id.* at 757-58. The court made explicit findings that despite Defendant's medical conditions, releasing Defendant back to probation for a third time was not "the answer." Less than four months into his original term of probation, Defendant violated his probation for DUI and driving on a suspended license and was reinstated to probation. Following those violations, the court found Defendant again violated his probation by abusing drugs and failing to report. The court additionally noted the repeated difficulties of getting Defendant to appear in court to answer for his violations. Given the court's stated findings, its decision is afforded a presumption of reasonableness. *Id.* at 759.

Defendant "reiterates on appeal the reasoning and argument made in the trial court below." Chiefly, his argument is that it is "a detriment to the State and taxpayers to assume the medical care of [Defendant] for the time he would serve . . . and that good behavior probation was actually not violative of the principles of sentencing . . . ." However, the trial court explicitly rejected this argument when it balanced the difficulty of providing for Defendant's medical issues with his repeated violations of probation. The court ultimately found that full revocation was appropriate and ordered Defendant's "expeditious transfer" to TDOC's Special Needs facility. Accordingly, we conclude that Defendant has not shown the court abused its discretion nor overcome the presumption of reasonableness the court is afforded. *Id.* at 759. Defendant is not entitled to relief.

III. Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

_____
s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE

- 4 -